```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

SGT. ANDREW N. MATTHEWS         :
                                :
v.                              :   CIV. NO. 3:07CV739 (WWE)
                                :
COL. EDWARD LYNCH, MAJ.         :
CHRISTOPHER ARCIERO, COL.       :
THOMAS DAVOREN, LT. WILLIAM     :
PODGORSKI, and JOHN DANAHER,    :
Commissioner of Conn. Dept.     :
of Public Safety                :
```

RULING ON DEFENDANT'S MOTION TO COMPEL TESTIMONY [Doc. #77]

Defendants move for an order compelling deposition testimony pursuant to Rule 37(a)(3)(B) of the Federal Rules of Civil Procedure and Local Rule 37(a). Plaintiff invokes the attorney-client privilege, claiming that the requested discovery is exempt under Rule 26(b). Parties bring cross-motions for attorneys' fees. For the following reasons, defendants' motion to compel [Doc. #77] is **DENIED** in part. Cross motions for fees [Doc. ##'s 77 and 82] are **DENIED.**

Background

Plaintiff Andrew N. Matthews is a Sergeant in the Connecticut State Police ("CSP"), Department of Public Safety ("DPS"). Defendants Thomas Davoren, Edward Lynch, Christopher Arciero, and William Podgorski are officers in the CSP. Defendant John Danaher is the Commissioner of the Connecticut DPS. All defendants are sued in their individual capacities only.

1

Plaintiff alleges that he engaged in whistle-blowing activities by providing various state agencies and government bodies with information pertaining to favoritism and corruption within the CSP. Plaintiff alleges that defendants, and other officers within the CSP, harassed, transferred, and investigated him in retaliation for his providing such information. Plaintiff commenced this action in federal court in May 2007. He seeks compensatory damages, punitive damages, and attorney's fees, pursuant to 42 U.S.C. § 1983.

Plaintiff was sworn in to practice law in the State of Connecticut on October 27, 2008. [Doc. # 77-4, Ex. B, Matthew's Dep. at 448]. Plaintiff testified at his deposition that he has met with coworkers identified as whistle-blowers to discuss their pending cases. [Id., Ex. A-B]. These members of the CSP include Theresa Freeman, Tom Driscoll, Benjamin Pagoni, Karen Nixon, Stephen Samson, Pat Carozza, and John Butkevicius ("Members"). [Id., Ex. B at 439-440]; all have filed lawsuits in federal court.

At his February 27, 2009, deposition, plaintiff refused to answer questions pertaining to a February 2009 meeting with six of the aforementioned Members[1]. [Id., Ex. A at 13-14]. Plaintiff invokes the attorney-client privilege with regard to the

---

[1]Plaintiff did not name Karen Nixon as being present at this meeting.

substance of all meetings with the Members since October 27, 2008.[2] [Id. At 17]. Plaintiff claims that he informed all Members that discussions pertaining to their legal situations were privileged, and that all Members understood such discussions to be privileged. [Id., Ex. B at 444]. Plaintiff further maintained at his deposition that, at the meetings, he discussed his litigation to use "some of the questions as an example to help them with some of the questions they had about their specific cases." [Id., Ex. B at 438].

Defendants consider testimony on the substance of these meetings to be relevant, as the Members may be "persons with personal knowledge of facts relevant to Matthew's claims," whom they may wish, in turn, to depose. [Doc. #77, Defs.' Mot. to Compel at 2]. Defendants' instant motion seeks a ruling on the legitimacy of the claim of attorney-client privilege in this case.

Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery.

---

[2]Plaintiff does refer to meetings with the members where they discussed their pending litigation prior to his being sworn in on October 27, 2008; however, plaintiff refused to testify as to the substance of these early meetings, as he is unsure if attorney-client privilege extends back before admission to, but after passing, the bar. Plaintiff indicated he would testify to those meetings upon researching and finding them non-privileged. See infra footnote 6.

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See Daval Steel Prods. V. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. United States v. Const. Prod. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).  The Court construes the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976); see In re Grand Jury Investigation, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the party invoking it. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of

Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997).

The Court uses a three-pronged standard for determining the legitimacy of an attorney-client privilege claim.  A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); Constr. Prods. Research, Inc., 73 F.3d at 473.

The essential principles governing attorney-client privilege are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at this instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev.1961). Again, the party asserting the privilege must establish the essential elements of the privilege.  Constr. Prods. Research, Inc., 73 F.3d at 473 (citing United States v. Adlman, 68 F.3d 1495, 1499 (2d Cir. 1995)).

1. Meetings Held Post Swearing In

    A. Prongs Two & Three Satisfied

Because plaintiff has thus far invoked attorney-client

privilege, defendants necessarily struggle to produce factual evidence to support any allegations pertaining to the nature of plaintiff's meetings with the Members.  Still, the burden of establishing applicability lies with the plaintiff.

Certain standards for the attorney-client privilege are satisfied in this case.  Plaintiff has testified in support of those standards; and defendants, having no other access to the meetings at issue, are at a loss to refute the testimony with facts.  Plaintiff has submitted affidavits from five of the Members that state:

> I have asked for [Matthews'] legal opinions and advice regarding my claims.... I fully expected and continue to expect that the communication with Attorney Matthews would be and will remain confidential."

[Doc. # 82-2, Affs. of Carozza, Nixon, Pagoni, Butkevicus, Samson]. Plaintiff clearly testified that at meetings with the Members, communications took place that were understood to be legal in nature and confidential. [Doc. # 77-4, Ex. A at 439-445].  The affidavits and deposition testimony satisfy parts two and three of the three-pronged standard set forth by the Second Circuit in In re County of Erie and Constr. Prods. Research, Inc. The Court finds that communication(s) occurred that were intended to be and were in fact kept confidential, and were made for the purpose of obtaining or providing legal advice.

### B. Prong One Satisfied

Defendants' opposition attacks the first prong: the establishment of communication between client and counsel. Regarding post-October 27, 2008 meetings, defendants argue that the context (casual or collegial meetings) precludes the existence of privileged attorney-client communications. Defendants maintain, "[P]laintiff effectively contends that any meeting with his co-workers concerning employment issues amount to consultation sessions, in which he dispassionately listened to each participant's legal dilemmas and responded with careful legal advice." [Doc. #77-2, Defs.' Mem. of Law in Supp. of Mot. to Compel at 7].

A protected communication can occur in a casual or collegial meeting. It is crucial, though, that at some point during meetings involving plaintiff and his co-workers, the co-workers undertook confidential communications with a person they knew to be a lawyer for the purpose of seeking legal advice.

Plaintiff maintains that the presence of all of the elements necessary to establish a privileged communication with an attorney, e.g., the mutual understanding of confidentiality, the legal subject, by definition make it privileged; while defendants contend that the relationship itself, and not just the communication, must be primarily legal in nature, rather than

collegial or friendly.³  In their motion, defendants argue that the Seventh Circuit held that privileged communications must come from a legal advisor acting in his professional capacity rather than a "long-time friend who happens to be a lawyer during [the] interactions." See U.S. v. Evans, 113 F. 3d 1457 (7th Cir. 1997). The Evans ruling to which defendants point states:

> The attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity.  A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.

Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1997); See also Richard O. Lempert & Stephen A. Saltzburg, A Modern Approach to Evidence (2d ed. 1982) at 659-660 ("When lawyers are consulted as family friends, business advisors, or political consultants, the privilege is inapplicable.") While the Court is not bound by rulings of the Seventh or Eighth Circuits, the Court construes the above language from Evans as addressing a person seeking nonlegal advice from a lawyer.  In such an example, the party claiming attorney-client privilege would fail

---

³Attorney Pattis echoes these sentiments during the deposition of one of the Members, John Butkevicius, in a separate case.  See Carroza et al v. Palmer et al., 3:07-cv-935-JBA.  He explains, "[Attorney] Emons and I have a disagreement that runs along the following lines: I take the view that any time someone consults a lawyer to get a legal opinion, that's privileged.  I think Ms. Emons may draw the line a bit closer to having been retained." [Doc. #77-4, Ex. D, Butkevicius' Deposition at 157].

to meet the Second Circuit's standard; the communication, albeit with a lawyer, would lack a legal context. In re County of Erie, 473 F. 3d 413.  But, in this case, Members and plaintiff have testified that the context in which communications occurred involved seeking legal advice. [Doc. ##'s 82-2 and 77-4, Ex. A at 439-445].  Information communicated to seek legal advice is protected even if the lawyer does not ultimately represent the prospective client.

The Court also recognizes Connecticut state law's interpretation of what constitutes an attorney client-relationship.  "An attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession." DiStefano v. Milardo, 276 Conn. 416, 422 (2005)(quoting Somma v. Gracey, 15 Conn.App. 371, 379 (1988)). "Evidence of either a retainer agreement or a contract between the parties is relevant to the determination of [the relationship's] existence."  Id., See Solomon v. Aberman, 196 Conn. 359, 384 (1985).

Although it is not necessary to the determination, the Court finds that evidence, in the form of affidavits and deposition testimony, is sufficient to establish the existence of an oral understanding, if not a written contract.  The Connecticut state law standard for the existence of "an attorney-client relationship" is met; plaintiff's deposition testimony and

9

Members' affidavits establish that the advice and assistance of the attorney [was] sought and received in matters pertinent to his profession. Id.; [Doc. ##'s 82-2 and 77-4, Ex. A at 439-445].

Even were the presence of a continuous attorney-client relationship, above and beyond the relationship established in specific communications, necessary to make a communication privileged, this Court has little way of knowing if plaintiff's relationship with the Members' was primarily collegial rather than legal. The only evidence on the record is plaintiff's deposition testimony that an attorney-client relationship exists. [Doc. #77-4, Ex. B at 439-440]. Plaintiff has succeeded in establishing each element of the Second Circuit's standard for communications with Members held after his swearing in to the bar on October 27, 2008.

C. Plaintiff May Invoke Common Interest Rule[4]

Once a privileged communication has been disclosed purposely to a third party, the attorney-client privilege is waived. United States v. United Technologies Corp, 979 F.Supp. 108 (D.Conn.1997). While plaintiff's meeting(s) with Members may have occurred in a group setting, disclosure among Members, who are third parties in each others' cases, does not necessarily

---

[4]This issue was not raised in parties' briefs, but was addressed at oral argument on June 18, 2009.

waive attorney-client privilege.[5]  The parties claiming protection under the common interest rule must share "a common interest about a legal matter." United Technologies Corp., 979 F. Supp. at 111 (citing U.S. v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989).  The Court recognizes differences in Member's cases, specifically that of different defendants.  Still, by bringing similar actions against the same agency, plaintiff and Members establish they share a "common legal interest," Id., at least for purposes of maintaining the attorney-client privilege.

2. Prior to Plaintiff's Swearing In

For reasons raised at oral argument, the Court will reserve judgment on the legitimacy of the claim of attorney-client privilege for meetings prior to plaintiff's swearing in on October 27, 2008.  Parties may have 30 days to file supplemental briefs addressing the legitimacy of the claim for that time period.[6]

---

[5]At oral argument, plaintiff's counsel thought alleged privileged communications between plaintiff and Members may have occurred only in one-on-one meetings.  At deposition, plaintiff invoked attorney-client privilege with regards to group meetings as well. [Doc. # 77-4, Ex. B at 437-438].

[6]At deposition, plaintiff said, "My only concern would be that, just because I am not familiar with whether this would actually be covered [by attorney-client privilege], although I passed the bar and received my results that I passed the bar, but I actually wasn't sworn in to practice yet, whether that would violate the rules of conduct.  I am not sure.  I am not familiar with that, so yes, if it's not protected, obviously, I would be willing to discuss it, but I am not positive what the rule is on that." [Doc. # 77-4, Ex. B at 448-449]

11

3. Cross Motions for Attorney's Fees [Doc. ##'s 77 and 82]

Parties bring cross motions for fees pursuant to Rule 37(a)(5). Under this rule, movant's or opposition parties' expenses may be covered unless [their] actions were "substantially justified." Fed.R.Civ.P.37 (a)(5)(A)(ii); Fed.R.Civ.P.37(a)(5)(B). The Court finds that defendants' motion and plaintiff's opposition meet this standard. Accordingly, cross motions for fees are **DENIED**.

Conclusion

For the reasons set forth above, the Court hereby **DENIES** defendants' motion to compel with respect to all relevant deposition testimony pertaining to meetings held after October 27, 2008. Pending parties' arguments, the Court will reserve judgment regarding meetings held prior to October 27, 2008.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 6th day of August 2009.

                                 _____/s/_____
                                 HOLLY B. FITZSIMMONS
                                 UNITED STATES MAGISTRATE JUDGE