UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SGT. ANDREW N. MATTHEWS,<br>     Plaintiff, | :<br>:<br>: | |
| v. | : | 3:07-cv-739 (WWE) |
| | : | |
| COL. EDWARD LYNCH,<br>MAJ. CHRISTOPHER ARCIERO,<br>LT. WILLIAM PODGORSKI, COL. THOMAS<br>DAVOREN, COMMISSIONER JOHN<br>DANNAHER III,<br>     Defendants. | :<br>:<br>:<br>:<br>:<br>: | |

**MEMORANDUM OF DECISION ON DEFENDANTS'
MOTION FOR JUDGEMNT ON THE PLEADINGS**

Plaintiff Sergeant Andrew N. Matthews of the Connecticut State Police brings this action alleging a violation of his First Amendment rights by defendants Col. Edward Lynch, Maj. Christopher Arciero, Lt. William Podgorski, Col. Thomas Davoren and Commissioner John Dannaher III.[1]  Now pending is defendants' motion for judgment on the pleadings (Doc. #132), which, for the following reasons, will be granted.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## BACKGROUND

As on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts all allegations of the operative complaint as true for purposes of ruling on a motion pursuant to Fed. R. Civ. P. 12(c).[2]

---

[1]  Former-Attorney General Richard Blumenthal was originally named as a defendant in this action.  Plaintiff dismissed all claims against Blumenthal pursuant to the first amended complaint.

[2]  At the time defendants filed their motion, the operative complaint was the first amended complaint.  In response to defendants' qualified immunity argument,

1

Plaintiff is a sergeant employed by the Connecticut State Police ("CSP"). Defendants Lynch, Arciero, Podgorski and Davoren are each members of the CSP. Defendant Dannaher is the Commissioner of the Connecticut Department of Public Safety. Each is sued only in his individual capacity.

Between July 2004 and July 2005, plaintiff worked as an internal affairs officer for the CSP. His responsibilities included investigating complaints of misconduct by the members of the CSP.

In the course of his duties, plaintiff learned that the CSP had a pattern and practice of covering up the misconduct of its officers. This misconduct included the commission of crimes, driving while intoxicated, family violence, misuse of state funds and other acts which would bring discredit to the CSP. Plaintiff disclosed information about favoritism within the CSP to the New York State Police ("NYSP") and the Connecticut Attorney General's Office. This favoritism had resulted in complaints against certain troopers being quashed if those troopers were the favorites of senior officers. Plaintiff offered sworn testimony to the NYSP, who had been asked to investigate claims that the CSP was engaged in covering up trooper misconduct.

In June 2005, plaintiff sought the advocacy and protection of the Attorney General's Office as a whistleblower pursuant to the Connecticut whistleblower statute, Conn. Gen. Stat. § 4-61dd, telling members of the Attorney General's Office and the Connecticut Auditors of Public Accounts about affirmative acts of corruption that he had

---

plaintiff sought to file a second amended complaint, which defendants did not oppose. The Court granted plaintiff's motion (Doc. #164) and will look to the second amended complaint (Doc. #165) as the operative one in this ruling.

witnessed as a member of the CSP.  Plaintiff was designated as a whistleblower by the Attorney General's Office in August 2005.

On June 6, 2006, plaintiff wrote a letter to the Attorney General's Office alleging that defendant Lynch had moved him to headquarters in direct retaliation for providing information to the Attorney General's Office.  On May 9, 2007, the Attorney General's Office released the "Report of the Office of the Attorney General Pursuant to Section 4-61dd of the Connecticut General Statues.  Report on the Allegations of Retaliation Against Sgt. Andrew Matthews of the Connecticut State Police."

After plaintiff broke ranks with the CSP and disclosed the CSP's involvement with covering up misconduct by active officers, defendants Lynch, Podgorski and Arciero decided that plaintiff should be isolated from contact with other officers.  As such, he was ordered transferred from the Internal Affairs office to an office in headquarters and to other locations where his activities could more easily be monitored and where he would be in closer proximity to known targets of corruption investigators.

Shortly after arriving at headquarters, a note was left on plaintiff's desk bearing the word, "Cancer."  Because of this note and other matters, plaintiff expressed concern for his physical safety to defendants Lynch, Podgorski and Arciero.  Despite this, he was forced to remain at headquarters.

In late 2006, the NYSP report was publicized.  It indicated that the CSP had a pattern and practice of tolerating unethical and unlawful acts of its troopers.

In June 2006, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities that he had been retaliated against in his employment by members of the CSP.  A hearing was scheduled for May 2007.

In early 2007, plaintiff's union complained to defendants Davoren, Podgorski and Arciero that the union feared for plaintiff's physical safety as a result of his whisteblower status and because plaintiff was known to speak publicly about corruption within the CSP. Defendants Davoren, Podgorski and Arciero refused to permit plaintiff to take a paid leave of absence. In addition, defendants Davoren, Podgorski and Arciero caused an internal affairs investigation of plaintiff to be undertaken regarding acts alleged to have occurred years earlier.

Defendant Dannaher was aware that plaintiff was given whistleblower status by the Attorney General's Office. On November 1, 2007, Dannaher assigned plaintiff to Brainard Field as his work location even though he had received a letter from the Attorney General's Office expressing concern regarding this work location for plaintiff. Dannaher also received a letter from plaintiff's counsel regarding the hostile and potentially violent work location for plaintiff at Brainard Field. In part, this letter stated:

> I have no doubt that Sgt. Matthews is walking into an extremely hostile, possibly dangerous, environment for him to be in. Based on my discussion with Trooper Steve Samson, the troopers at Brainard Field do not want Sgt. Andy Matthews, the whistleblower, at their location. I believe the internal affairs investigation of the aviation unit at Brainard Field which is being conducted by Lt. Marty Lane will also substantiate this hostile environment. According to Trooper Samson, the other troopers believe that Sgt. Matthews was responsible for Trooper Samson's whistleblower complaint regarding the trooper who threatened to shoot not only troopers but civilians at Brainard Field. This trooper, who is under internal investigation, is still working and carrying a gun.

Dannaher appointed Lieutenant Spellman to the board for the recent CSP lieutenant's exam. Dannaher was aware that Spellman had filed a complaint against plaintiff which made plaintiff the subject of an internal affairs investigation and that Spellman was

4

furious with plaintiff for coming forward as a whistblower.

Plaintiff alleges that defendants' acts were intended to silence him and force him to leave public employment.

## DISCUSSION

A motion for judgment on the pleadings under Rule 12(c) is evaluated like a motion to dismiss pursuant to rule 12(b)(6). Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). As with a motion to dismiss, it is meant "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) (referring to motion to dismiss). When deciding a rule 12(c) motion, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984) (referring to motion to dismiss).

Plaintiff claims that he faced retaliation because of his whistleblowing activities in violation of the First Amendment to the United States Constitution.

For plaintiff's claim to be viable, his speech must have been protected under the First Amendment. Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008). Protected speech must be made by plaintiff as a citizen and be on a matter of public concern. Garcetti v. Ceballos, 547 U.S. 410, 419 (2006). If plaintiff did not speak as a citizen or the speech is not on a matter of public concern, he can have no First Amendment retaliation claim. Sousa v. Roque, 578 F.3d 164, 169 (2d Cir. 2009).

The Court must first determine whether plaintiff was speaking as a citizen for First Amendment purposes pursuant to Garcetti. In Garcetti, the Supreme Court held

5

that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. Thus, if plaintiff's speech was required by his job as a state trooper, then his statements are not protected speech. If not, the Court must consider whether plaintiff's statements addressed a matter of public concern. Connick, 461 U.S. 138.

Whether an employee spoke "pursuant to" his job duties is an objective, practical inquiry. Garcetti, 547 U.S. at 424; Weintraub v. Bd. of Educ., 593 F.3d 196, 202 (2d Cir. 2010). The "pursuant to" inquiry turns on whether the speech "owes its existence to a public employee's professional responsibilities." Garcetti, 547 U.S. at 421; Weintraub, 593 F.3d at 202. In construing an employee's job duties, the Garcetti Court cautioned that:

> [f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

Garcetti, 547 U.S. at 424-25. Rather, courts have found that speech pursuant to official duties or "in furtherance of such duties" qualifies. See Weintraub, 593 F.3d at 202. In Weintraub, the Court of Appeals concluded that a public employee spoke pursuant to his official job duties when his speech was "part-and-parcel of his concerns" about his ability to "properly execute his duties." Id. The Court did not mandate the speech be "required by, or included in, the employee's job description, or in response to a request by the employer." Id.

6

The Fifth Circuit has held that where an employee speaks not only up the chain of command, but to persons outside his workplace, "those external communications are ordinarily not made as an employee, but as a citizen." Davis v. McKinney, 518 F.3d 304, 313 (5th Cir. 2008); Carter v. Inc. Vill. of Ocean Beach, 693 F. Supp. 2d 203, 210 (E.D.N.Y. 2010); see also Garcetti, 547 U.S. at 423 ("Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government.").

According to the complaint, plaintiff spoke to the NYSP and the Attorney General's Office regarding his concerns about misconduct within the CSP. He further alleged that his job duties include investigating complaints of trooper misconduct. These activities lead to the conclusion that plaintiff spoke pursuant to his professional duties, and, therefore, his speech is not protected by the First Amendment under Garcetti.

Plaintiff attempts to show that his speech was not made pursuant to his official duties because he was acting as a whistleblower pursuant to Conn. Gen. Stat. § 4-61dd and because he reported the misconduct outside his chain of command. These arguments do not change the Court's conclusion.

As to plaintiff's whistleblower contention, "investigating and reporting crime are the core functions of a law enforcement officer." Paola v. Spada, 2007 U.S. Dist. LEXIS 99307 (D. Conn. Dec. 7, 2007), aff'd, 372 Fed. Appx. 143 (2d Cir. 2010). As a police officer with the Internal Affairs office, plaintiff was charged with investigating and reporting crime. See Paola, 2007 U.S. Dist. Lexis 99307, *7-8 (discussing

7

responsibilities of police officers under Connecticut law); Conn. Gen. Stat. § 29-7. When plaintiff saw misconduct, he reported it to authorities who are "tasked by statute to investigate reports of corruption and wrongdoing within Connecticut State Agencies and Department." The rejection of plaintiff's claim then boils down to the fact that he was a police officer charged with reporting crime and that he did in fact report misconduct to the agencies to which he was supposed to report such misconduct.

It does not matter than all citizens are permitted to report misconduct to the NYSP or the Attorney General's Office. In cases where courts have found that a well-defined statutory avenue for all citizens meant that the plaintiff was speaking as a citizen, it was because the plaintiff reported to a body outside of his job responsibilities. For example, in Caraccilo v. Vill. of Seneca Falls, the court denied summary judgment because it could not conclude that plaintiff was required by her job duties to report to those agencies to which she had reported. The chief focus was not whether the avenue was open to all – citizens and employees – but rather on why the plaintiff utilized that avenue. See Caraccilo, 582 F. Supp. 2d 390, 412 (W.D.N.Y. 2008).

In addition, in Anemone v. Metro. Transp. Auth., the Court of Appeals held that a plaintiff who reported misconduct to the district attorney was not protected by the First Amendment. The Court's conclusion rested on the fact that although the district attorney was outside of his chain of command, the plaintiff had spoken pursuant to what he believed to be his official duty. 629 F.3d 97, 115-17 (2d Cir. 2011).

Finally, the pre-Garcetti opinion in Cioffi v. Averill Park Central Sch. Dist. Bd. of Educ. similarly involves a plaintiff who held a press conference to report misconduct of a public concern. In that case, plaintiff was not required to report the misconduct to the

8

audience that he did. See Cioffi, 444 F.3d 158 (2d Cir. 2006). Cioffi supports the oddity that plaintiff's speech may be protected when made to one audience but not, as here, when made to another. See Morales v. Jones, 494 F.3d 590, 598 (7th Cir. 2007); see also Garcetti, 547 U.S. at 427 (Stevens, J., dissenting).

Plaintiff raises the form of his actions over the substance. The case law under Garcetti suggests that an employee's professional duties and responsibilities are to be interpreted broadly. It is therefore not appropriate to look only to the form of plaintiff's actions. His actions in informing authorities about misconduct within the CSP, however laudatory, was done in accordance with his professional duties and responsibilities as a state trooper. As such, they are not protected by the First Amendment. Plaintiff's complaint will be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings (Doc. #132) is GRANTED. The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 11th day of April, 2011.

                        /s/  
                        Warren W. Eginton  
                        Senior United States District Judge